**SO ORDERED.**

**SIGNED this 21 day of December, 2015.**

David M. Warren
United States Bankruptcy Judge

---

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO. 14-00286-5-DMW** |
| **MARQUES SNEED OGDEN** | **CHAPTER 7** |
| Debtor | |

| | |
|---|---|
| **GT CONTRACTING CORP.** | |
| Plaintiff | **ADVERSARY PROCEEDING** |
| vs. | **NO. 14-00005-5-DMW** |
| **MARQUES SNEED OGDEN** | |
| Defendant | |

### ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF

This matter comes on to be heard upon the Motion for Summary Judgment and accompanying Memorandum of Law in Support of the Motion for Summary Judgment ("Motion") filed by GT Contracting Corp. ("Plaintiff") on June 2, 2015 and the Opposition to Motion for Summary Judgment and Cross Motion for Summary Judgment and accompanying Memorandum

of Law in Opposition to Motion for Summary Judgment filed by Marques Sneed Ogden ("Defendant") on July 29, 2015. The court conducted a hearing in Raleigh, North Carolina on September 23, 2015. John P. Sherry, Esq. and Douglas Q. Wickham, Esq. appeared for the Plaintiff, and William E. Brewer, Jr., Esq. appeared for the Defendant. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.      The Defendant filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on January 15, 2014 ("Petition Date").

3.      The debt at issue in this adversary proceeding originates from construction work performed by the Plaintiff on several different projects for Kayden Premier Enterprises Inc., f/k/a Kayden Enterprises, Inc. ("Kayden"). The Plaintiff obtained a default judgment ("Default Judgment") against Kayden and the Defendant who was the chief executive officer and majority shareholder of Kayden on August 6, 2013. The Default Judgment was entered in the Circuit Court for Baltimore County, Maryland ("Maryland Court") in the amount of $475,412.58.

4.      The Default Judgment was based on violations of the Maryland Construction Trust Statute ("MCTS") under Md. Code Ann, Real Prop. § 9-201. The Plaintiff seeks summary judgment on its Motion to have the Default Judgment declared nondischargeable by the court. The basis for the nondischargeabilty of the Default Judgment is the Defendant's commission of defalcation while acting in a fiduciary capacity under 11 U.S.C. §523(a)(4).

2

5.      The Plaintiff moves under Rule 7056 of the Federal Rules of Bankruptcy Procedure that incorporates Rule 56 of the Federal Rules of Civil Procedure.  That rule states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

6.      The Plaintiff argues that there is no genuine issue of material fact, and that the Plaintiff is entitled to summary judgment because the Default Judgment conclusively establishes that the Defendant violated the MCTS.  An essential element of MCTS is that the Defendant committed acts of defalcation which is an essential element of § 523.  Further, the Default Judgment should preclude any defenses to nondischargeabilty and should estop the Defendant from asserting any defenses in a subsequent dischargeabilty action.

7.      In *Grogan v. Garner,* 498 U.S. 279, 284 (1991), the Supreme Court concluded explicitly that principles of collateral estoppel apply in dischargeabilty proceedings in bankruptcy. *Pahlavi,* 113 F. 3d at 19.  When "determining the preclusive effect of a state court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel." *Id.* "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* (quoting *Hagan v. McNallen* (*In re McNallen*), 62 F.3d 619, 624 (4th Cir. 1995).

8.      The Fourth Circuit in *Pahlavi* found that, because the law of the state where the original litigation occurred controlled the preclusive effect of the state's judgments in federal court, and because Virginia law allowed collateral estoppel in default judgments, the plaintiffs' compensatory damage award was nondischargeable.  The court rejected defendant's argument that the parties never

"actually litigated" defendant's fiduciary status, or whether a defalcation occurred because the Virginia judgment was a default judgment. *Pahlavi,* 113 F.3d at 21. Therefore, according to the Supreme Court and the Fourth Circuit holdings, this court must look to the law of Maryland to determine whether collateral estoppel applies to the Default Judgment.[1]

9. The doctrine of collateral estoppel, or issue preclusion, bars this court from the relitigation of an issue that was actually litigated and necessarily decided in a prior court. *Fleming v. McCoskey (In re McCoskey),* Adv. No. 05-1267-SD, 2006 WL 5217793 * 3 (Bankr. D. Md. Feb. 21, 2006). "While the generally accepted view is that no issues are actually litigated in a default judgment, Maryland courts have consistently held that default judgments deserve the preclusive effects of any other judgment." *Id.* The court in *Fleming* further stated the "'public policy' bar even extends to cases concluded by default judgments wherein the issue *could have been litigated.* Although obviously not 'litigated,' issues determined by default judgment are nonetheless conclusive." *Id.* (citing *Glens Falls Ins. v. Amer. Oil Co.,* 254 Md. 120 (1969)) (emphasis added). Default Judgment "is still final in respect of the question of the liability of the party against whom it is obtained." *Id.* (citing *Himes v. Day*, 254 Md. 197, 206 (1969). "Like every other judgment, it is conclusive of every fact necessary to uphold it." *Id.* (citing *Heyward v. Sanner*, 86 Md. 19, 21 (1897)). Thus, the court "cannot go behind the judgment by default to examine into and determine upon the validity of the cause of action upon which suit is instituted and any testimony offered to contradict liability is inadmissible." *Nationwide Mut. Ins. Co.*, 44 Md. App. 547, 554-55.

10. After an analysis of *Porter Hayden Co. v. Bullinger*, 350 Md. 452 (Md. 1998), decided by the Maryland Court of Appeals, the *Fleming* court stated, "under Maryland law, the issues on which default judgment and order for punitive damages are predicated, are deemed conclusively decided."

---

[1] If the court were instead required to follow the laws of North Carolina, the defalcation or fraud claim would need to be actually litigated. See *In re Fowler*, 312 B.R. 287, 292 (Bankr. E.D.N.C. 2004); See also *In re Raynor*, 922 F.2d 1146, 1149 (4th Cir.1991).

4

*Fleming v. McCoskey,* Adv. No. 05-1267-SD, 2006 WL 5217793 * 4.  The court further stated that, "Maryland law gives preclusive effects to default judgments. More critically, Maryland law gives preclusive effects to any issue that could have been litigated and that underlies the default judgment." *Id.* at 4.

11.    The complaint filed by the Plaintiffs in the Maryland Court sought liability against Ogden for the violation of the MCTS. The MCTS states:

> Any moneys paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

Md. Code Ann., Real Prop. § 9-201(b)(1).

The MCTS further states:

> An officer, director, or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor under paragraph (1) of this subsection is a trustee for the purpose of paying the money to the subcontractors who are entitled to it.

Md. Code Ann., Real Prop. § 9-201(b)(2).

12.    The Order ("Order") on the Plaintiff's Motion for Default Judgment entered by the Maryland Court on July 18, 2013 specifically finds that judgment is entered in favor of the Plaintiffs against the Defendant "for violating the Maryland Construction Trust Act, Md. Code Ann., Real Property, §9-201, *et seq.*, in the principal amount of [$475,412.58] plus court costs and post-judgment interest at the legal rate."  The Plaintiffs argue that the entry of the Default Judgment for violation of the MCTS indisputably establishes that Defendant committed defalcation, and that the Defendant is collaterally estopped from asserting otherwise.

13.    Under the MCTS, upon receiving funds from an owner, a contractor must hold the funds in trust for the benefit of the subcontractor that performed the work. *Ferguson Trenching Co., Inc. v. Kiehne,* 329 Md. 169, 171 (1993).  The MCTS imposes personal liability on an officer of a

contractor who fraudulently uses the funds by providing that "[a]ny officer, director, or managing agent of any contractor or subcontractor, who knowingly retains or uses the moneys held in trust under § 9–201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the moneys are held in trust, shall be personally liable to any person damaged by the action." Md. Code Ann., Real Prop. § 9–202.  In order to determine that the Defendant was individually liable under the statute, the Maryland Court must have found that the Defendant was an officer, director or managing agent of Kayden who knowingly retained or used moneys held in trust for a purpose other than to pay the Plaintiff.

14.     The Plaintiff alleged that the Defendant had control of the funds received by Kayden. Those funds were designated for payment to the Plaintiff for work performed.  Upon receipt of those funds, the Defendant was a trustee of those funds for the benefit of the Plaintiff, and that the Defendant misappropriated those funds in violation of the MCTS.  The Plaintiff provided the Maryland Court testimony in support of those allegations in the form of deposition testimony of the Defendant contained within Exhibit B to the Motion and an affidavit from the Vice-President of Kayden contained within Exhibit D to the Motion.  The Maryland Court relied on the allegations as tacit omissions of the Defendant and the support provided by the Plaintiff to enter the Default Judgment.  The issue of whether the Defendant violated the MCTS and any facts upon which the Maryland Court relied to reach that conclusion are conclusively established by the Default Judgment and cannot be relitigated in this court.

15.     The question before this court, however, is whether the violation of the MCTS and the underlying facts relied upon by the Maryland Court require a finding by this court that the Defendant committed defalcation while functioning in a fiduciary capacity under 11 U.S.C. 523(a)(4), making the Plaintiff's claim nondischargeable.  To prove that a debt is nondischargeable under 11 U.S.C. § 523(a)(4), "a creditor must prove the debtor committed (1) fraud or defalcation (2) while acting in a

fiduciary capacity." *Pahlavi v. Ansari (In re Ansari),* 113 F.3d 17, 20 (4th Cir. 1997). The burden of proof is on the Plaintiff as the creditor to establish by a preponderance of the evidence that the debt is not dischargeable. *Kubota Tractor Corp. v. Strack (In re Strack),* 524 F.3d 493, 497 (4th Cir. 2008) (citation omitted). The exceptions to discharge as provided in § 523 are to be construed narrowly "to protect the purpose of providing debtors a fresh start." *Foley & Lardner v. Biondo (In re Biondo),* 180 F.3d 126, 130 (4th Cir. 1999).

16.    The term "defalcation" under 11 U.S.C. §523(a)(4) requires a finding of at least an "intentional wrong" or in the absence of an intentional wrong, a finding that "the fiduciary 'consciously disregards' a 'substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Bullock v. Bankchampaign, N.A,.* 133 S.Ct. 1754, 1759 (2013).

17.    The term "fiduciary" for purposes of § 523(a)(4) "is limited to instances involving express or technical trusts." *Memo Money Order Co. v. Davis (In re Davis),* 371 B.R. 127, 135 (Bankr. E.D.N.C. 2007) (citing *In re Harrell,* 173 F.3d 850, No. 98-1728, 1999 WL 150278, at *3 (4th Cir. Mar. 19, 1999) (unpublished)). The fiduciary relationship contemplated by § 523(a)(4) does not exist where an express or technical trust has not been established prior to the alleged misappropriation of funds. *Davis*, 371 B.R. at 135.

18.    In the instant case, the MCTS clearly creates a trust. The MCTS provides that all money paid to a contractor for work performed "*shall be held in trust* by the contractor or subcontractor, *as trustee for those subcontractors . . .* for purposes of paying those subcontractors." Md. Code Ann., Real Prop. § 9-201(b)(1) (emphasis added). The MCTS creates an express trust upon the receipt by the contractor of the funds paid by other contractors or owners for work performed or materials furnished.

19.    This statutory trust created by the MCTS constitutes an express trust for the purposes of 11 U.S.C. § 523(a)(4). The Fourth Circuit has implied, in *Kelley v. Kelley (In re Kelley)*,

No. 91-2055, 948 F.2d 1281 (4th Cir. Nov. 27, 1991), that a statutory trust can constitute an express trust.  The court in *Kelly* relied on a Michigan construction law statute, similar to the MCTS, in support of the argument that a Virginia statute created an express trust.  The court found because the statute defined the trust *res,* established fiduciary duties, and imposed a trust on the funds upon receipt, it created the necessary trust relationship under § 523(a)(4).

20.      In the present matter, the MCTA established a trust upon receipt of the funds paid for work performed and establishes a fiduciary duty on the contractors or owners.  Under the MCTS, the trust *res* is made up of the funds paid to a contractor for work performed on a project.  The trustee, under the MCTS, is charged with the duty to ensure that the trust *res* is paid to the subcontractors for the work performed which is an affirmative fiduciary duty.

21.      Furthermore, this court has previously held that trusts created by statutes are sufficient for establishing the fiduciary relationship required by 11 U.S.C. § 523(a)(4). *See, e.g., N.C. Lottery Comm'n v. Wells (In re Wells),* 431 B.R. 379, 381–82 (Bankr. E.D.N.C. 2009); *Keener Lumber Co., Inc. v. Perry,* No. S–02–00007–5–AP, at 7 (Bankr. E.D.N.C. Oct. 7, 2002) (emphasizing "that 523(a)(4) requires an explicit trust, whether created by agreement or by statute...."); *In re Ponos*, 2013 WL 5681067 (Bankr. E.D.N.C. Oct. 18, 2013)*; In re Wells,* 431 B.R. 379 (Bankr. E.D.N.C. 2009); *In re Stephenson*, 12–00228–8–AP, 2013 WL 593900, at *5 (Bankr. E.D.N.C. Feb. 15, 2013).

22.      According to the Supreme Court in *Grogan*, the Fourth Circuit in *Pahlavi,* and the Maryland courts in *Fleming*, this court must give a preclusive effect to the Default Judgment entered by the Maryland Court and all the facts upon which the Maryland Court relied in entering the Default Judgment.  Even without considering the findings in the Default Judgment, the undisputed facts and the admissions of the Defendant, both tacit and actual, provide conclusive evidence that the Defendant committed defalcation pursuant to § 523(a)(4) as a fiduciary of Kayden by his violation of the MCTS.

The facts and admissions alleged in the Plaintiffs pleadings are sufficient for the court to find that the Defendant committed defalcation under § 523(a)(4), making the Plaintiff's claim nondischargeable.

23.    The Defendant has admitted that at all times he was the chief executive officer and majority owner of Kayden and had ultimate authority and control over the company. Ex B to the Motion, Ogden Dep. Tr., March 16, 2015, p. 10:3-6; p. 14:20-23; p. 16:2-8.  The Defendant further admitted that he was a "trustee," as the terms is defined under the MCTS. Ans. at ¶ 18.  The Defendant also admits that he was a signatory on all of Kayden's bank accounts. Ex. B to Motion, Ogden Dep. Tr., March 16, 2015, p.49:20-22.  These admissions establish the Defendant as the "trustee" of the construction trust as contemplated by the MCTS.

24.    The Defendant accepted the work performed by the Plaintiff and received payment for the work performed by the Plaintiff but failed to make payment to the Plaintiff in full for the work performed. Ans. at ¶12; ¶¶13-19.  In his deposition testimony, the Defendant stated that he was aware when payments were made to Kayden from an owner or general contractor on a project. *Id*. at p 33:3-6.  Specifically, the Defendant knew when Kayden was receiving payments from contractors for the work that the Plaintiff performed. *Id*. at p. 53: 25; p.54:1-7.  Finally, the Defendant admitted that he failed to pay the Plaintiff in full on the work performed. Ans. ¶ 13.  These admissions conclusively establish that the Defendant violated the fiduciary duties imposed on him as the "trustee" of the construction trust.

25.    Finally, the submission of fraudulent lien waivers to general contractors on projects which the Plaintiff performed work proves that the Defendant committed fraud under 11 U.S.C. § 523(a)(4).  The Fourth Circuit has held that the submission of fraudulent payment applications misrepresenting the payment of lower tier subcontractors satisfies the higher burden of proving fraud for purposes of nondischargeabilty in the context of a MCTS claim. See *SG Homes Associates, LP v. Marinucci*, 718 F.3d 327, 335-336 (4th Cir. 2013).  The Defendant signed, and had notarized, lien

9

waivers that misrepresented that all subcontractors had been paid to date. Ex. E to the Motion.  The

lien waivers for the projects on which the Plaintiff performed work state:

> Except as noted below, the Company further acknowledges and represents that all persons and entities which have provided labor or material, or rented equipment, for or through the Company in connection with the Project have been paid in full for the periods covered by previous payments, that previous payments to the Company have been properly applied to pay all outstanding invoices relating to the Project, that the Company is not aware of any claims or circumstances which could give rise to future claims, against the Owner, General Contractor or the Project…

 Ex. E to the Motion, Partial Waiver and Release for Second Tier Subcontractors and Suppliers, August 19, 2010, pg.1.

The Defendant admitted that he signed lien waivers executed by Kayden, and his signature appears on

the lien waivers. Ex B to the Motion, Ogden Dep. Tr., March 16, 2015, p.31; 22-25; Ex. E.  The

Defendant, however, previously admitted that the Plaintiff had not been paid in full for the work it

performed. Ans. at ¶12; ¶¶13-19.  The Plaintiff argues that the Defendant's admissions, in conjunction

with the fraudulent lien waivers bearing his signature, prove that the Defendant committed fraud as

contemplated by 11 U.S.C. § 523(a)(4), making the Plaintiffs claim nondischargeable.   This court

agrees.

26.    Pursuant to the holdings in the Supreme Court, the Fourth Circuit and the majority

holdings in Maryland, this court must give a preclusive effect to the Default Judgment entered by

the Maryland Court which found that the Defendant violated the MCTS.  The MCTS creates a

trust, imposes fiduciary duties on owners or contractors making them "trustees" and imposes

personal liability on contractors or owners such as the Defendant, when they violate those fiduciary

duties.  The requirements for a finding that the claim is nondischargeable under § 523(a)(4), which

include fraud or defalcation while acting in a fiduciary capacity, have been established by

Maryland Court's finding that the Defendant violated the MCTS.

27.    Even if the court could not rely upon the Default Judgment, no genuine issue of any

material fact exists, and the Plaintiff is entitled to judgment as a matter of law.  The undisputed

material facts contained in the Plaintiff's pleadings, specifically the deposition admissions and testimony in Exhibits B and D to the Motion, and the fraudulent lien waivers in Exhibit E to the Motion, establish that the Defendant committed both fraud and defalcation while in a fiduciary capacity which the United States Bankruptcy Code explicitly exempts from discharge under 11 U.S.C. § 523(a)(4);  now therefore,

It is ORDERED, ADJUDGED and DECREED that the Plaintiff's Motion is granted, and summary judgment is entered in favor of the Plaintiff.

END OF DOCUMENT